**RECORD NO. 14-2055**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

LISA COVINGTON, as Personal Representative of the Estate of Otis Garnes, Deceased;
MARQUISE GARNES; JOYCE GARNES; MARVIN GARNES; ARNETTA HUDSON;
DELORSE ALCINDOR; LINDA EDWARDS,

*Plaintiffs – Appellants,*

v.

MCIC, INC.; GENERAL ELECTRIC COMPANY; WALLACE & GALE ASBESTOS
SETTLEMENT TRUST; SB DECKING, INC.; WAYNE MANUFACTURING COMPANY,

*Defendants – Appellees,*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND AT BALTIMORE**

---

**BRIEF OF APPELLEES**

---

Mitchell Y. Mirviss
Theodore F. Roberts
Scott M. Richmond
Venable LLP
210 W. Pennsylvania Avenue
Towson, MD 21204
(410) 494-6200
Counsel for Appellee, Wallace and Gale
Asbestos Settlement Trust

Louis E. Grenzer, Jr.
Bodie, Dolina, Hobbs, Friddell &
Grenzer, P.C.
305 Washington Avenue, Suite 300
Towson, MD 21204
(410) 823-1250
Counsel for Appellee, MCIC, Inc.

Donald S. Meringer
David J. Quigg
Meringer, Zois & Quigg, LLC
320 North Charles Street
Baltimore, Maryland 21201
(443) 524-7978
Counsel for Appellee, General Electric
Company

David W. Allen
Terri Goldberg
Aaron L. Moore
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4000
Counsel for Appellee, Wayne
Manufacturing Company

(Additional counsel listed on inside cover)

F. Ford Loker
Derek P. Roussillon
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 727-6464
Counsel for Appellee, S.B. Decking, Inc.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-2055        Caption: Lisa Covington v. MCIC, Incorporated

Pursuant to FRAP 26.1 and Local Rule 26.1,

MCIC, Inc.

(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations? ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☑YES ☐NO
      If yes, identify entity and nature of interest:

         The following entities may have an interest in the outcome: The Hartford, Arrowood Indemnity
         Company, Travelers, Continental Insurance Company.


5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:


Signature: /s/ Louis E. Grenzer, Jr.                Date:        10/20/14

Counsel for: MCIC, Inc.


## CERTIFICATE OF SERVICE
*****************************

I certify that on ___October 20, 2014___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:


/s/ Louis E. Grenzer, Jr.                                10/20/14
        (signature)                                       (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-2055__        Caption: __Lisa Covington, et al. v. MCIC, Incorporated, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__General Electric Company__
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    [✓]YES [ ]NO

2.    Does party/amicus have any parent corporations?    [ ]YES [✓]NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    [ ]YES [✓]NO
      If yes, identify all such owners:

10/28/2013 SCC                    - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____October 15, 2014_____

Counsel for: General Electric Company

## CERTIFICATE OF SERVICE
**************************

I certify that on ___October 15, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
(signature)

_____October 15, 2014_____
(date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-2055__        Caption: __Lisa Covington v. MCIC, Incorporated__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Wallace & Gale Asbestos Settlement Trust__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                   ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☑YES ☐NO
If yes, identify entity and nature of interest: The Travelers Companies, Inc., a publicly-held corporation,
is the ultimate parent of Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety
Company) and St. Paul Fire and Marine Insurance Company, which insure the Wallace & Gale
Asbestos Settlement Trust, and may have a financial interest in the outcome of the litigation. By
insurance agreements, The Granite State Insurance Company and New Hampshire Insurance
Company also may have a direct financial interest in the outcome of the litigation.

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Theodore F. Roberts                          Date:    October 20, 2014

Counsel for:  Wallace & Gale Asbestos Settlement Trust

## CERTIFICATE OF SERVICE
**************************

I certify that on    October 20, 2014    the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Harry Goldman, Jr., Esq.
Skeen Goldman LLP
11 East Lexington Street 4th Fl.
Baltimore, MD 21202

Mr. Robert Gordon Skeen, Esq.
Skeen Goldman LLP
11 East Lexington Street 4th Fl.
Baltimore, MD 21202

/s/ Theodore F. Roberts                                     October 20, 2014
_____                                    _____
(signature)                                                (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __14-2055__        Caption: __Covington v. MCIC, Inc. et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__S.B. Decking Inc.__
(name of party/amicus)

_____

who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                                   ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
        Quaker Chemical Corporation

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐ YES ☑ NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct
   financial interest in the outcome of the litigation (Local Rule 26.1(b))?　☑YES ☐NO
   If yes, identify entity and nature of interest:

   Nationwide Indemnity, on behalf of Employers Insurance of Wausau, an insurer.

5. Is party a trade association? (amici curiae do not complete this question)　☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected
   substantially by the outcome of the proceeding or whose claims the trade association is
   pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?　☐YES ☑NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: F. Ford Loker, Jr. Esq　　　　　　Date: October 16, 2014

Counsel for: S.B.Decking, Inc.

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on ___October 16, 2014___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

F. Ford Loker, Jr. Esq.　　　　　　　　　　October 16, 2014
　　　　(signature)　　　　　　　　　　　　　　　(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-2055        Caption: Lisa Covington v. MCIC, Incorporated

Pursuant to FRAP 26.1 and Local Rule 26.1,

Wayne Manufacturing Company
(name of party/amicus)


who is        Respondent        , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?   ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ David W. Allen                          Date:         12/12/2014

Counsel for: Wayne Manufacturing Corporation

## CERTIFICATE OF SERVICE
*****************************
I certify that on   December 12, 2014   the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ David W. Allen                                         December 12, 2014
        (signature)                                                (date)

- 2 -

## TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT. ............................................................1

ISSUES PRESENTED FOR REVIEW. ......................................................1

STATEMENT OF THE CASE. .................................................................2

A.  Proceedings Below. ........................................................................2

B.  Statement of Facts. .........................................................................3

C.  The Decisions Below ......................................................................5

SUMMARY OF ARGUMENT. .................................................................7

ARGUMENT ...........................................................................................11

I.  Standard of Review .........................................................................11

II.  Under Settled Maryland Law, the *Lohrmann/Balbos* "Frequency, Regularity, and Proximity" Test Applies to Plaintiffs' Clams, Not Plaintiffs' "Each-and-Every-Exposure" Test. .................................... 12

    A.  The *Lorhmann/Balbos* test establishes Maryland law governing asbestos exposures. ................................................ 12

    B.  The *Lohrmann/Balbos* test is the majority rule ...................... 14

    C.  The *Lohrmann/Balbos* test applies to cancer claims .............. 16

    D.  The *Lohrman/Balbos* test defeats Plaintiffs' "each-and-every-exposure" theory of substantial-factor causation .................................... 16

III.  Plaintiffs Fail to Satisfy the "Frequency-Regularity-Proximity" Test............ 18

    A.  MCIC. ....................................................................................... 20

    B.  General Electric. ...................................................................... 23

        1.  The district court did not abuse its discretion in denying Plaintiffs' motion for leave to file their summary judgment opposition out-of time....................... 24

i

**Page**

a.    Plaintiffs fail to show a meritorious defense and exceptional circumstances.........................................25

     i.     No meritorious defense..................................... 25

     ii.    No exceptional circumstances. ...................... 29

b.    Plaintiffs' failure to oppose GE's summary judgment is not excusable neglect. ............................ 30

2.    GE was entitled to summary judgment on the merits..................... 33

C.    SB Decking.......................................................................... 34

1.    The Locilento deposition and Dembosky responses to requests for admissions are inadmissible and should be ignored on appeal.................................................................. 34

2.    Plaintiffs did not prove that Garnes was substantially exposed to asbestos from an SB Decking product.......................... 36

D.    WGAST. ............................................................................. 39

IV.  Plaintiffs Failed to Establish Personal Jurisdiction over Wayne. ................... 41

A.    The district court correctly rejected Plaintiffs' stream-of-commerce argument and held that Wayne is not subject to personal jurisdiction in Maryland.............................................. 41

B.    Plaintiffs' veil-piercing argument was not raised below and may not be raised for the first time on appeal. ......................... 43

C.    Plaintiffs failed to offer any evidence to support veil-piercing.............. 45

V.  Plaintiffs Cannot Defeat Motions for Summary Judgment through Sweeping Incorporations by Reference of Arguments, Memoranda, or Evidence Filed in a Different Case....................................... 48

VI.  Plaintiffs Were Not Entitled to a Hearing.................................................... 50

CONCLUSION. ....................................................................................... 50

# TABLE OF AUTHORITIES

**Page**

**Cases**

ACandS, Inc. v. Godwin,
    667 A.2d 116 (Md. 1995) ...................................................... *passim*

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).................................................................. 11

Augusta Fiberglass Coating v. Fodor Contracting,
    843 F.2d 808 (4th Cir. 1988) .......................................... 25-26, 32

Balbos v. Eagle-Picher Indus., Inc.,
    604 A.2d 445 (Md. 1992) ...................................................... *passim*

Borg-Warner Corp. v. Flores,
    232 S.W.3d 765 (Tex. 2007)..................................................... 15

Bostic v. Georgia-Pacific Corp.,
    439 S.W.3d 332 (Tex. 2014)..................................................... 17

Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,
    334 F.3d 390 (4th Cir. 2003) ................................................... 42

Celotex v. Catrett,
    477 U.S. 317 (1986).................................................................. 39

Chavers v. Gen. Motors Corp.
    79 S.W.3d 361, 370 (Ark. 2002)............................................... 18

Christian v. Minn. Mining & Mfg. Co.,
    126 F. Supp. 2d 951 (D. Md. 2001) ......................................... 26

Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc.,
    973 F.2d 349 (4th Cir. 1992) .......................................... 11, 12, 50

Compton v. Alton Steamship Co.,
    608 F.2d 96 (4th Cir. 1979) .............................................. 25, 29

**Page**

<u>Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.</u>,
    33 F.3d 390 (4th Cir. 1994) ............................................ 50

<u>DeWitt Truck Brokers, Inc. v. W. Roy Flemming Fruit Co.</u>,
    540 F.2d 681 (4th Cir. 1976) ................................. 45, 46-47

<u>Dixon v. Ford Motor Co.</u>,
    70 A.3d 328 (Md. 2013) .......................................... *passim*

<u>Dowell v. State Farm Fire & Cas. Co.</u>,
    993 F.2d 46 (4th Cir. 1993) .................................... 25, 29

<u>Evans v. United Life & Accident Ins. Co.</u>,
    871 F.2d 466 (4th Cir. 1989) ................................... 24, 32

<u>Exxon Mobil Corp. v. Albright</u>,
    71 A.3d 30 (Md.),<u>on recon. in part,</u> 71 A.3d 150, <u>cert. denied,</u>
    134 S. Ct. 648 (2013) ........................................... 16-17

<u>Ford Motor Co., v. Wood</u>,
    703 A.2d 1315 (Md. App. 1998) ................................ 9, 28

<u>Francis v. Allstate Ins. Co.</u>,
    709 F.3d 352 (4th Cir. 2013) .................................. 14-15

<u>Frietsch v. Refco, Inc.</u>,
    56 F.3d 825 (7th Cir. 1995) ....................................... 35

<u>Glynn v. Edo Corp.</u>,
    710 F.3d 209 (4th Cir. 2013) .................................. 11, 43

<u>Goldrick v. D.M. Picton Co.</u>,
    56 F.R.D. 639 (E.D. Va. 1971) .................................... 46

<u>Goodyear Dunlop Tire Operations, S.A. v. Brown</u>,
    131 S. Ct. 2846 (2011) ............................................ 44

**Page**

Gregg v. V-J Auto Parts Co.,
    943 A.2d 216 (Pa. 2007) ............................................................ 17-18

Haley Paint Co., v. E.I. DuPont de Nemours & Co.
    775 F. Supp. 2d 790 (D. Md. 2011) .......................................... 45, 47

Hare v. Family Publications Serv., Inc.,
    42 F. Supp. 678 (1972) ................................................................... 46

Hargrave v. Fibreboard Corp.,
    710 F.2d 1154 (5th Cir. 1983) ....................................................... 47

Holcomb v. Georgia-Pacific, LLC,
    289 P.3d 188 (Nev. 2012) .................................................... 8, 15, 17

Holland v. Big River Minerals Corp.,
    181 F.3d 597 (4th Cir. 1999) .................................................. 10, 44

Home Port Rentals, Inc. v. Ruben,
    957 F. 2d 126 (4th Cir. 1992) ........................................................ 30

Horne v. Owens-Corning Fiberglas Corp.,
    4 F.3d 276 (4th Cir. 1993). ..................................................... 22, 35

Hudson Assoc. Consulting, Inc. v. Weidner,
    No. 06-2461-EFM, 2010 WL 1980291 (D. Kan. May 18, 2010)...................... 49

In re Celotex Corp.,
    124 F.3d 619, 628 (4th Cir. 1997) ..................................... 10, 42, 43

Int'l Shoe Co. v. Washington,
    326 U.S. 310 (1945)......................................................................... 42

Keeton v. Hustler Magazine, Inc.,
    465 U.S. 770 (1984)................................................................. 10, 46

Keziah v. W.M. Brown & Son, Inc.,
    88 F.2d 322 (4th Cir. 1989) ........................................................... 34

**Page**

Klaxon Co. v. Stentor Elec. Mfg. Co.,
  313 U.S. 487 (1941) ................................................ 15

Kolibash v. Comm. On Legal Ethics,
  872 F.2d 571 (4th Cir. 1989) ................................... 11

Lesnick v. Hollingsworth & Vase Co.,
  35 F.3d 939 (4th Cir. 1994) ............................... 10, 42-43

Lindstrom v. AC Prod. Liab. Trust,
  424 F.3d 488 (6th Cir. 2005) .................................. 17

Lohrmann v. Pittsburgh Corning Co.,
  782 F.2d 1156 (4th Cir. 1986) ........................... *passim*

Moeller v. Garlock Sealing Techs., LLC,
  660 F.3d 950 (6th Cir. 2011) .................................. 18

Muth v. United States,
  1 F.3d 246 (4th Cir. 1993) .................................... 44

Mylan Labs., Inc. v. Akzo, N.V.,
  2 F.3d 56 (4th Cir. 1993) ........................... 10, 45, 46, 47

Nolan v. Weil-McLain,
  910 N.E.2d 549 (Ill. 2009) .................................... 17

Owens-Corning Fiberglas Corp. v. Garrett,
  682 A.2d 1143 (Md. 1996) ............................... 13, 16, 19

Phipps v. Gen. Motors Corp.,
  363 A.2d 955 (Md. 1976) ...................................... 26

Quinn v. Bowmar Publishing,
  445 F. Supp. 780 (D. Md. 1978) ............................... 46

**Page**

Reiter v. Pnemo Abex, LLC,
    8A.3d 725 (Md. 2010)..................................................................*passim*

Rhodes v. E.I. DuPont de Nemours and Co.,
    636 F.3d 88 (4th Cir. 2011) ............................................... 11

Robinson v. Wix Filtration Corp.,
    599 F.3d 403 (4th Cir. 2010) ................................... 9, 31, 32

Rohrbough v. Wyeth Labs., Inc.,
    916 F.2d 973 (4th Cir. 1990) ............................................ 34

Sclafani v. Air & Liquid Sys. Corp.,
    No. 2:12-CV-3013-SVW-PJW, 2013 WL 2477077
    (C.D. Cal. May 9, 2013) ................................................... 17

Scott v. Health Net Fed. Servs., LLC,
    463 F. App'x 206 (4th Cir. 2012) .................................... 50

Shetterly v. Raymark Indus., Inc.,
    117 F.3d 776 (4th Cir. 1997) ....................................... 19-20

Sweredoski v. Alfa Laval, Inc.,
    No. PC-2011-1544, 2013 WL 3142893 (R.I. Super. June 13, 2013) ............... 17

Tucker v. U.S. Dept. of the Army,
    Civ. A. No. J-79-2256, 1981 WL 380684 (D. Md. Aug. 3, 1981) ............... 31-32

United States v. Dickerson,
    166 F.3d 667 (4th Cir. 1999) ............................................ 44

United States v. Dunkel,
    927 F.2d 955 (7th Cir. 1991) ............................................ 49

United States v. One 1971 Mercedes Benz 2-Door Coupe,
    542 F.2d 912 (4th Cir. 1976) ............................................ 44

**Page**

Weiss v. La Suisse,
  69 F. Supp. 2d 449 (S.D.N.Y. 1999) ................................................. 47


**Statutes**

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. § 1442(a)(1) ....................................................................... 1, 27

Ohio Rev. Code Ann. § 2307.96(B) (2008) .......................................... 15


**Rules**

D. Md. Loc. R. 105.6 ....................................................................... 11, 50

Fed. R. Civ. P. 56(a) ............................................................................ 11

Fed. R. Civ. P. 60 ........................................................................ *passim*

Fed. R. Civ. P. 78(b) ...................................................................... 11, 50

Fed. R. Evid. 804(b)(1)(B) ............................................................. 21, 35


**Other Authorities**

David E. Bernstein, Getting to Causation in Toxic Tort Cases,
74 Brook. L. Rev. 51, 55-56 n. 16 (2008)............................................. 15

Charles Alan Wright & Arthur R. Miller, 11 Federal Practice and
Procedure § 2810.1 (3d ed. 2015) ....................................................... 35

## JURISDICTIONAL STATEMENT

This is an asbestos case brought by Appellants-Plaintiffs Lisa Covington, et al. ("Plaintiffs" or "Pls.") on December 4, 2008 in the Circuit Court for Baltimore City, Maryland. Defendant General Electric Corporation ("GE") removed the action to the U.S. District Court for the District of Maryland (the "district court") on February 14, 2012 based on federal-officer jurisdiction, 28 U.S.C. § 1442(a)(1). On September 17, 2014, the district court (Russell, J.) entered final judgment by dismissing claims against the remaining defendants, having previously granted summary judgment in favor of Appellees-Defendants MCIC (f/k/a McCormick Asbestos Company); GE; Wallace and Gale Asbestos Settlement Trust ("WGAST"); SB Decking Inc. ("SBD"); and Wayne Manufacturing Company ("Wayne") (collectively, "Defendants"). Plaintiffs appealed on September 30, 2014. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.    Did the district court err in applying Maryland's longstanding "Lohrmann/Balbos" test for causation requiring proof of frequent, regular, and proximate exposure to asbestos-containing products, and not changing Maryland law by replacing Lohrmann/Balbos with a single-exposure test?

2.    Did the district court err in granting summary judgment to Defendants where Plaintiffs failed to produce evidence satisfying the Lohrmann/Balbos test?

3.    Where Plaintiffs had failed to oppose GE's motion for summary judgment despite receiving two extensions, did the district court abuse its discretion by denying Plaintiffs' motions (a) for reconsideration of its order granting GE's unopposed motion for summary judgment, and (b) for leave to file their opposition memorandum to GE's summary judgment motion out-of-time?

4.    Did the district court err when it found that it had no jurisdiction over Wayne, where there is no evidence that Wayne engaged in any actions purposefully directed to Maryland?

5.    Did the district court err in granting summary judgment without a hearing, as permitted by local rule?

## STATEMENT OF THE CASE

### A.    Proceedings Below.

On December 4, 2008, Plaintiffs, the eight surviving children of Otis Garnes, brought a $50-million wrongful death suit in the Circuit Court for Baltimore City alleging that Mr. Garnes died on October 11, 2005 at age eighty-three from lung cancer caused by exposure to asbestos-containing products sold, manufactured, or installed by sixty-three defendants. (JA 124-45). A prior case Garnes had brought for asbestosis had previously been settled. (Pls. Br. 6). On January 17, 2012, Plaintiffs served interrogatory answers claiming, for the first time, that Garnes was exposed to asbestos aboard a Navy ship. (JA 44, 92-94). Within thirty days, on

2

February 14, 2012, GE removed the case under federal-officer jurisdiction based on this new information. (JA 42-57). Plaintiffs filed a motion to remand on March 15, 2012, which was denied on April 27, 2012. (JA 10, Dkt. 90; JA 11, Dkt. 108).

Plaintiffs dismissed fifty-eight defendants voluntarily or by consenting to summary judgment, and narrowed their claims, leaving claims for negligence, strict liability, and loss of consortium. E.g., JA 24, Dkt. 293-96; JA 28-29, Dkt. 370-72; JA 33, Dkt. 421-22, 431. Thereafter, starting on November 13, 2013 and ending on June 11, 2014, the district court granted Defendants' motions for summary judgment. (JA 1739-40, 2181-92). After denying motions for reconsideration (JA 2176-78, 2436-37), the district court created a final judgment by dismissing two last defendants on September 17, 2014, and Plaintiffs appealed (JA 40, Dkt. 501-02).

## B.    **Statement of Facts.**

Garnes was not deposed in this case. Plaintiffs instead rely on his testimony in the asbestosis case, where he claimed exposure at three locations.

First, for 7-8 months in 1940, Garnes worked as a clean-up laborer on a Navy "Liberty" supply ship, the USS Patrick Henry, under construction at Bethlehem Steel's Fairfield Shipyard in Baltimore. (JA 93-94, 143, 496-99, 513-15). He did not use asbestos-containing products. Instead, during less than a week's time, he worked near insulators applying asbestos-containing insulation (sheets and pipe-covering) to the ship boiler and pipes in the engine room; he did not know who

employed the insulators, what products they used, or how long their work took. (JA 500-01, 505-08, 516, 607). He claimed to have worked on other ships also but could not identify them. (JA 514). Years later, Garnes allegedly worked on demolition of the Patrick Henry and saw insulation getting removed, but he did not know when this occurred or who had employed him. (JA 609-14).

Garnes next worked for Maryland Drydock in 1942, where he was trained as a welder-burner for 3-4 months. (JA 519-21). He left for military service and returned in 1944, working off-and-on into 1947 (JA 93-94, 143, 522, 540, 560) and again in 1966-67 (JA 601, 604). He could not recall how many ships he worked on or any of their names (JA 522, 524, 542, 556, 602, 605-06), but he recalled exposure to asbestos in the engine boiler rooms from working nearby insulators for 3-4 days at a time; he was uncertain if asbestos was used in the deckhouse (JA 526-28, 531, 533, 535-36, 544-45, 548-54, 603-06). Garnes did not know the names of any products or companies involved. (JA 528-29, 531-32, 557, 606-08).

Finally, Garnes alleged that he was exposed to asbestos when he worked at the Curtis Bay Coast Guard base in Baltimore for three-quarters of 1953 and one quarter of 1956. (JA 568-72, 574-75). He worked on cutters and other ships, spending half of his time in engine rooms where asbestos products were applied, but he could not recall how many ships he worked on or name any ships, insulators, or

products used.  (JA 572-73, 576, 578-83, 588, 590-91, 595-98, 607-08).  He did not know if asbestos sheets were used in the deckhouses.  (JA 578).

For all three shipyards, Garnes could not identify a single Defendant's asbestos-containing product that he frequently and regularly worked nearby. Although Garnes previously had alleged exposures at other locations, see JA 93-94, 143, in this deposition, he and his counsel denied exposure to asbestos at other locations, effectively disclaiming these allegations.  (JA 567-68).

Plaintiffs did not produce co-worker testimony placing Garnes near any asbestos-containing product manufactured, supplied, or installed by any Defendant. Instead, in opposing Defendants' summary judgment motions, Plaintiffs cited *only* to historical evidence placing a Defendant in a shipyard generally.  They showed no evidence that Garnes was near any Defendant's product on a particular ship for a particular length of time.  See, e.g., JA 1504-05 (SB Decking); 1567-68 (MCIC).

Despite the lack of evidence placing Garnes near Defendants' employees or asbestos-containing products, Plaintiffs claim that Defendants caused his lung cancer.  They do so even though Garnes smoked cigarettes from age 8 to age 75.

## C.     The Decisions Below.

This case was heard by Judge Russell, along with two other asbestos cases: Hurley, No. GLR-12-cv-0462, and Harper, No. GLR-12-0461.  The district court carefully sifted through over 2,500 pages of summary judgment materials and issued

5

individualized decisions, motion-by-motion. As to MCIC, WGAST, and SB Decking, the district court ruled that Plaintiffs had not presented any evidence that Garnes was ever exposed to any Defendant's products, let alone frequent exposure on a regular basis in close proximity to where he worked, and thus did not establish exposures that were a substantial factor in causing his lung cancer as required by Maryland law. See JA 2183-85 (MCIC); 2186-87 (SB Decking); 2188-89 (WGAST). Plaintiffs moved for reconsideration, regurgitating old arguments and adding new evidence, all to no avail. (JA 2436-37).

Plaintiffs never responded to GE's summary judgment motion despite having twice extended the deadline for their response. See JA 2176. In granting Plaintiffs' second request, the district court warned that "no further extension shall be granted absent consent of all parties to this litigation." See id. Despite these two reprieves, Plaintiffs did not respond by the last deadline (November 4, 2013) or thereafter. On November 13, 2013, the district court granted GE's motion, finding no evidence that Garnes was exposed to a GE asbestos-containing product. (JA 1739-40). Plaintiffs subsequently moved for reconsideration and for leave to file a belated summary judgment response (JA 1939-50, 2076-82), but the district court denied the motions, ruling that Plaintiffs had failed to show both excusable neglect and a meritorious claim. (JA 2176-78).

Finally, the district court granted Wayne summary judgment based on a lack of personal jurisdiction. Specifically, the district court rejected Plaintiffs' stream-of-commerce theory to establish personal jurisdiction over Wayne. It ruled that Wayne, a defunct Virginia corporation, had no contacts with Maryland other than to introduce its product into the stream of commerce, which, under Supreme Court precedent, did not constitute minimum contacts purposefully directed at Maryland. (JA 2190-92). Indeed, the district court ruled that the Plaintiffs had failed to meet their burden of offering "any evidence that Wayne engaged in any actions purposefully directed at Maryland." (JA 2190-92).

After the last remaining defendants settled, Plaintiffs noted this appeal.

## **SUMMARY OF ARGUMENT**

1.     Plaintiffs' challenge to the "regularity, frequency, and proximity test" of <u>Lohrmann v. Pittsburgh Corning Co.</u>, 782 F.2d 1156, 1162-63 (4th Cir. 1986), is contrary to Maryland law. Starting with <u>Balbos v. Eagle-Picher Indus., Inc.</u>, 604 A.2d 445, 460 (Md. 1992), Maryland cases have repeatedly held that this test "remains 'the common law evidentiary standard used for establishing substantial-factor causation." <u>Dixon v. Ford Motor Co.</u>, 70 A.3d 328, 332-33 (Md. 2013). Far from a discredited case, even after thirty years, <u>Lohrmann</u> remains the majority rule nationally. <u>ACandS, Inc. v. Godwin</u>, 667 A.2d 116, 125-26 (Md. 1995). The test applies to cancer claims, <u>Balbos</u>, 604 A.2d at 448, and it defeats Plaintiffs' "each-

and-every-exposure theory" of causation.   See Lohrmann, 782 F.2d at 1162; Holcomb v. Georgia-Pacific, LLC, 289 P.3d 188, 197 (Nev. 2012).

2.    In arguing that Maryland allows minimal exposures, Plaintiffs ignore decisions like Reiter v. Pnemo Abex, LLC, 8 A.3d 725, 733 (Md. 2010), which requires frequent exposure in a "limited area in the facility where the decedent was located on a day-to-day basis."  Their cited cases involve much greater exposures than occurred here; in Balbos, a decedent spent two years regularly exposed to asbestos from defendant's product.

a.    For MCIC, the only witness that provided testimony concerning Garnes' exposure to asbestos was Garnes himself, and he did not identify MCIC, let alone testify to frequent, regular, and proximate exposures to products associated with MCIC.  Another witness whom they describe as the "main testimonial proof on Mr. Garnes" (Kenneth Groshon) never mentioned Garnes in his testimony, nor did their third witness, Harry Jurs.  Plaintiffs' case against MCIC therefore rests on rank speculation that, when Garnes worked on the demolition of a ship in the late 1960s, he was exposed to asbestos from insulation that MCIC allegedly installed on the ship over two decades earlier, without any evidence to show that that original insulation was installed by MCIC, had remained intact over the ensuing decades, and was never replaced.  Causation cannot be based on such unproven speculation and surmise.

b.     For GE, Plaintiffs fail to show that the district court abused its discretion in denying their motion for leave to oppose summary judgment out-of-time under Fed. R. Civ. P. 60(b). They cannot show exceptional circumstances, and they do not have a meritorious defense to GE's summary judgment motion –they cite evidence pertaining to land-based turbines that has nothing to do with GE's marine turbines on Navy ships, and their claim that GE is liable for asbestos products affixed to its turbines by others is contrary to current law. Ford Motor Co. v Wood, 703 A.2d 1315, 1332 (Md. App. 1998). Their failure to oppose summary judgment, despite having been granted two extensions by the district court and having been warned that no further extensions would be granted, is not excusable neglect under Rule 60(b)(1). Robinson v. Wix Filtration Corp., 599 F.3d 403, 413 (4th Cir. 2010).

c.     For SBD, Plaintiffs rely on inadmissible evidence –a deposition taken in a case that did not involve SBD, and material submitted below *after* the court had granted summary judgment – neither of which links Hurley to SBD. Plaintiffs rest on unsupported speculation that, because one formulation of an SBD product contained asbestos, Garnes must have been exposed to the asbestos-containing version and not to a non-asbestos version. Plaintiffs have no evidence placing Garnes in proximity to the asbestos-containing version of SBD's product.

d.     For WGAST, Garnes never named it as a source of his alleged asbestos exposures. Moreover, no evidence shows that Garnes ever worked at Key

9

Highway Shipyard, the place of his alleged exposure, let alone that he had frequent, regular, and proximate exposure to any WGAST-associated products at that facility.

3.    As to Wayne, the district court correctly rejected Plaintiffs' stream-of-commerce argument and held that Wayne is not subject to personal jurisdiction in Maryland. See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997); Lesnick v. Hollingsworth & Vase Co., 35 F.3d 939, 946-47 (4th Cir. 1994).

In their brief, Plaintiffs raise for the first time a veil-piercing argument. As that issue was not raised below, this Court should not consider it. See Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999) (issues not raised below generally are not considered on appeal). Moreover, the veil-piercing argument fails on the merits. Plaintiffs' contention that Wayne, a subsidiary of Hopeman Brothers, is subject to personal jurisdiction in Maryland via Hopeman Brothers' Maryland contacts is contrary to settled law requiring undue influence or improper disregard of corporate formalities to pierce the corporate veil. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 61 (4th Cir. 1993). As a general rule, subsidiaries are not subject to personal jurisdiction due to the activities of their parent corporations. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984). Plaintiffs in any event offered no evidence either below or before this Court to support its position.

4.    In opposing summary judgment, Plaintiffs improperly incorporated by reference unspecified material from other cases that was never placed in the record.

5.    Per Fed. R. Civ. P. 78(b) and D. Md. Loc. R. 105.6, Plaintiffs were not entitled to a hearing.  See Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc., 973 F.2d 349, 352 (4th Cir. 1992).

## ARGUMENT

## I.    Standard of Review.

Summary judgment rulings are reviewed de novo, viewing facts in the light most favorable to the nonmoving party.  Glynn v. Edo Corp., 710 F.3d 209, 213 (4th Cir. 2013).   Under Fed. R. Civ. P. 56(a), "summary judgment is proper if the nonmoving party fails to make a sufficient showing of an essential part of that party's case."  Rhodes v. E.I. Du Pont de Nemours and Co., 636 F.3d 88, 94 (4th Cir. 2011). The moving party must show that no genuine issue exists as to any material fact, i.e., that no reasonable jury could find for the nonmoving party.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).    To defeat summary judgment, the nonmoving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'"  Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252).  Forum (Maryland) substantive law applies.  See Kolibash v. Comm. on Legal Ethics, 872 F.2d 571, 576 (4th Cir. 1989) ("A federal court's role under § 1442 is similar to that of a federal court sitting in diversity.").  Finally, procedural issues, including decisions not to hold a hearing or allow an unexcused, belated summary

judgment response, are reviewed for abuse of discretion. <u>See</u> <u>Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc.</u>, 973 F.2d 349, 352 (4th Cir. 1992).

## II. Under Settled Maryland Law, the *Lohrmann/Balbos* "Frequency, Regularity, and Proximity" Test Applies to Plaintiffs' Claims, Not Plaintiffs' "Each-and-Every-Exposure" Test.

Maryland law is clear, settled, and unequivocal as to the substantial-factor causation standard in *all* asbestos cases: "the factors to be evaluated include the nature of the product, the frequency of its use, the proximity, in distance and in time, of a plaintiff to the use of a product, and the regularity of the exposure of that plaintiff to the use of that product."). <u>Lohrmann v. Pittsburgh Corning Co.</u>, 782 F.2d 1156, 1162-63 (4th Cir. 1986); <u>Balbos v. Eagle-Picher Indus., Inc.</u>, 604 A.2d 445, 460 (Md. 1992). This test is the unquestioned law for Maryland asbestos cases.

### A. The *Lohrmann/Balbos* test establishes Maryland law governing asbestos exposures.

In <u>Lohrmann</u>, this Court held that Maryland applies a "frequency, regularity, and proximity" test to determine whether exposure was a substantial factor in causing injury:

> To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a *regular* basis over *some extended period of time in proximity* to where the plaintiff actually worked. Such a rule is in keeping with … plaintiff's medical expert who testified that even thirty days exposure … was insignificant as a causal factor[.]

782 F.2d at 1162-63 (emphasis added). The Court of Appeals of Maryland (the "COA") adopted <u>Lohrmann</u>'s test, ruling that "the factors to be evaluated include

the nature of the product, the *frequency* of its use, the *proximity*, in distance and in time, of a plaintiff to the use of a product, and the *regularity* of the exposure of that plaintiff to the use of that product." Balbos, 604 A.2d at 460 (emphasis added). Two years ago, the COA "confirmed that the Balbos 'frequency, regularity, and proximity' test *remains 'the common law evidentiary standard* used for establishing substantial-factor causation in negligence cases alleging asbestos exposure.'" Dixon v. Ford Motor Co., 70 A.3d 328, 332-33 (Md. 2013) (emphasis added) (quoting Scapa v. Saville, 16 A.3d 159, 163 (2011)); accord Reiter v. Pnemo Abex, LLC, 8 A.3d 725, 732-35 (Md. 2010) (applying Balbos); Georgia-Pacific Corp. v. Pransky, 800 A.2d 722, 725 (Md. 2002) (applying Balbos to direct-evidence exposures); ACandS, Inc. v. Asner, 686 A.2d 250, 257-61 (Md. 1996) (Balbos test does not compare exposures to other products); Owens-Corning Fiberglas Corp. v. Garrett, 682 A.2d 1143, 1155-57 (Md. 1996) (applying Balbos); ACandS, Inc. v. Godwin, 667 A.2d 116, 123 (Md. 1995) (affirming that "frequency, regularity, and proximity" test is the standard for "substantial-factor causation in asbestos cases"). The test ranks among the blackest of black-letter Maryland common-law principles.

Plaintiffs urge the Court to cast aside Lohrmann/Balbos and replace it with a test that requires only invoices or other evidence showing that a product was shipped to a facility and that plaintiff worked at that general location (i.e., in a shipyard). See Pls. Br. 28-31, 40. Lohrmann rejected this argument, ruling that "a plaintiff must

prove more than a casual or minimum contact with the product" and that, "when one considers the size of a workplace such as Key Highway Shipyard, the mere proof that the plaintiff and a certain asbestos product are at the shipyard at the same time, without more, does not prove exposure to that product." 782 F.2d at 1162. Invoices are insufficient because they do not establish "the times [the products] were [at] the shipyard or their locations[.]" Id. at 1164.

In challenging Lohrmann, Plaintiffs contend that it precludes circumstantial proof of exposure (Pls. Br. 24-26), but Lohrmann does no such thing: it addresses the *quantum* of exposure, eliminating minimal or incidental contacts, not the manner of proof. Lohrmann indeed *approves* circumstantial proof: "To support *a reasonable inference* of substantial causation *from circumstantial evidence*, there must be evidence of exposure to a specific product *on a regular basis over some extended period of time in proximity* to where the plaintiff actually worked." 782 F.2d at 1162-63 (emphasis added). What Lohrmann does not permit is Plaintiffs' hyper-attenuated level of proof. Since Balbos, no Maryland case has affirmed claims based invoices or general historical evidence placing a product in a facility. Judge Russell did not err by applying Lohrmann/Balbos.

### B.    The *Lohrmann/Balbos* test is the majority rule.

Every law student learns that "[a] federal court sitting in diversity is required to apply the substantive law of the forum state[.]" Francis v. Allstate Ins. Co., 709

F.3d 352, 369 (4th Cir. 2013) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941)).  Plaintiffs' call to overrule <u>Lohrmann</u>/<u>Balbos</u> (Pls. Br. 28-32) thus is spurious, at best.  This Court can no more abandon <u>Lohrmann</u>/<u>Balbos</u> and alter Maryland law than it can reject holdings by the U.S. Supreme Court.  Plaintiffs' criticism that the rule "invades the province of the jury" and "flies in the face of medical evidence," <u>id.</u>, is made to the wrong court.

Even if <u>Erie</u> doctrine were to vanish, Plaintiffs provide no substantive basis to reject <u>Lohrmann</u>.  Their claim that it is discredited nationally is dead wrong.  "This so-called 'frequency, regularity, and proximity' test is the majority rule."  <u>Godwin</u>, 667 A.2d at 123 (citing Fourth, Fifth, Seventh, and Eighth Circuit decisions and a decision in the Third Circuit).  Since <u>Godwin</u>, "'[t]he majority of the federal circuits and state courts addressing this question have chosen to apply the <u>Lohrmann</u> test[.]'" <u>Holcomb v. Georgia-Pacific, LLC</u>, 289 P.3d 188, 195 (Nev. 2012) (citation omitted); <u>see also</u> David E. Bernstein, <u>Getting to Causation in Toxic Tort Cases</u>, 74 Brook. L. Rev. 51, 55-56 n.16 (2008) (noting that Florida, Georgia and Ohio adopted <u>Lohrmann</u> *by statute*).  Even the two jurisdictions identified as rejecting <u>Lohrmann</u> (Ohio and Texas, <u>see</u> Pls. Br. 29-30), actually *follow* <u>Lohrmann</u>.  <u>See</u> Ohio Rev. Code Ann. § 2307.96(B) (2008); <u>Borg-Warner Corp. v. Flores</u>, 232 S.W.3d 765, 773 (Tex. 2007).  As a widely followed precedent, <u>Lohrmann</u> is no outlier warranting revisiting and reversal.

### C.    The *Lohrmann/Balbos* test applies to cancer claims.

Plaintiffs' suggestion that the <u>Lohrmann</u>/<u>Balbos</u> test does not apply to cancer claims (Pls. Br. 29) is incorrect as well.  <u>Balbos</u>' opening sentences state: "These consolidated tort actions arise out of the deaths …. caused by malignant mesothelioma," a form of cancer.  604 A.2d at 448.  *All* subsequent COA cases applying <u>Lohrmann</u>/<u>Balbos</u> involve mesothelioma or lung cancer.  <u>See</u> <u>Dixon</u>, 70 A.3d at 330 (mesothelioma); <u>Scapa</u>, 16 A.3d at 162 (lung cancer and mesothelioma); <u>Reiter</u>, 8 A.3d at 728 (lung cancer); <u>Pransky</u>, 800 A.2d at 723 (mesothelioma); <u>Asner</u>, 686 A.2d at 253 (mesothelioma); <u>Garrett</u>, 682 A.2d at 1144 (mesothelioma); <u>Godwin</u>, 667 A.2d at 121 (mesothelioma).  When eight out of eight COA decisions disprove Plaintiffs' contention, little else need be said.

### D.    The *Lohrmann/Balbos* test defeats Plaintiffs' "each-and-every-exposure" theory of substantial-factor causation.

Plaintiffs next contend that each exposure to asbestos – no matter how fleeting in time or distant from the product – is a substantial cause of cancer.  (Pls. Br. 29). This "each-and-every-exposure" theory of causation calls for a sea-change in Maryland law, rewriting thirty years of precedent.  <u>See</u> <u>Lohrmann</u>, 782 F.2d at 1162 (holding that a "rule that if the plaintiff can present any evidence that a company's asbestos-containing product was at the workplace while the plaintiff was at the workplace, a jury question has been established" would be "contrary to the Maryland law of substantial causation"); <u>Exxon Mobil Corp. v. Albright</u>, 71 A.3d 30, 84-85

(Md.) (rejecting claim that "plaintiffs exposed to MTBE or benzene contamination … at greater levels than … through everyday activities possessed a significantly increased risk of developing cancer"), on recon. in part, 71 A.3d 150, cert. denied, 134 S. Ct. 648 (2013).   In Dixon, the COA allowed "each-and-every-exposure" expert testimony, *not* because the opinion was valid proof of causation, but because it "was based on evidence of repeated exposures … to high-level doses of asbestos fibers … and must be viewed in that light." 70 A.3d at 337; id. at 335-36 (explaining that expert relied on plaintiff's 1,000-day exposure).

As the Nevada Supreme Court states, "the courts that adopt the three-factor test of frequency, regularity, and proximity regularly reject the 'any' exposure argument." Holcomb, 289 P.3d at 197.[1]   Or, as the Sixth Circuit aptly explained in

---

[1] See Lindstrom v. AC Prod. Liab. Trust, 424 F.3d 488, 493 (6th Cir. 2005) (maritime law) (expert opinion that "sought to base causation on any hypothetical exposure, however slight, [is] insufficient … to avoid summary judgment"); Sclafani v. Air & Liquid Sys. Corp., No. 2:12-CV-3013-SVW-PJW, 2013 WL 2477077, at *4 (C.D. Cal. May 9, 2013) ("each and every exposure" opinion "would render the 'substantial factor' prong of the causation test meaningless"); Bostic v. Georgia-Pacific Corp., 439 S.W.3d 332, 338 (Tex. 2014) ("even in mesothelioma cases, proof of 'some exposure' or 'any exposure' alone will not suffice to establish causation"); Sweredoski v. Alfa Laval, Inc., No. PC-2011-1544, 2013 WL 3142893, at *7-8 (R.I. Super. June 13, 2013) ("evidence that 'each and every exposure' to the defendant's product caused the plaintiff's harm … necessarily fails to satisfy the 'frequency' and 'regularity' prongs" and "is legally insufficient to establish proximate causation"); Nolan v. Weil-McLain, 910 N.E.2d 549, 558-59 (Ill. 2009) (affirming "Lohrmann's frequency, regularity and proximity test" and "thereby reject[ing] the argument… that so long as there is *any* evidence [of exposure], there is sufficient evidence of cause…to go to the jury") (emphasis in original); Gregg v. V-J Auto Parts Co., 943 A.2d 216, 226-27 (Pa. 2007) (refusing to "indulge in a fiction that each and every

rejecting the any-exposure theory under Kentucky law: "[o]n … this record, saying that exposure to Garlock gaskets was a substantial cause of Robert's mesothelioma would be akin to saying that one who pours a bucket of water into the ocean has substantially contributed to the ocean's volume." Moeller v. Garlock Sealing Techs., LLC, 660 F.3d 950, 955 (6th Cir. 2011).

Plaintiffs ask this Court to abandon Lohrmann/Balbos because they know they lack proof that Garnes was frequently, regularly, and proximately exposed to Defendants' products. Only a party that cannot win under applicable law would argue so vehemently that the law is wrong.

## III.    Plaintiffs Fail to Satisfy the "Frequency-Regularity-Proximity" Test.

In arguing that Maryland cases allow de minimis exposures (Pls. Br. 24-28), Plaintiffs misstate the law. They ignore Reiter, which requires frequent exposure in a "limited area in the facility where the decedent was located on a day-to-day basis." 8 A.3d at 733. Reiter upheld summary judgment orders finding no proof that defendants' products were used at decedents' regular worksites. Id. Plaintiffs do not discuss Dixon, whose plaintiff had a *1,000-day* exposure, 70 A.3d at 337, or Scapa, whose plaintiff handled defendant's product daily for *one year*, 16 A.3d at 167, or the scores of decisions granting summary judgment due to minimal exposure.

---

exposure to asbestos … implicates a fact issue concerning substantial-factor causation"); Chavers v. Gen. Motors Corp., 79 S.W.3d 361, 370 (Ark. 2002) ("a one-time exposure does not satisfy … the test requiring regularity and frequency").

The key point is that proof of causation "is fact specific to each case," Balbos, 604 A.2d at 460, and Plaintiffs' cases involve much greater exposures than here:

- In Balbos, id. at 458, 461-63, one decedent spent two years in engine rooms regularly exposed to asbestos from defendant's product and the other's exposure was less frequent but "over a much longer period."

- In Godwin, 667 A.2d at 125, a plaintiff worked "nearly every day" in one or more furnaces "as it was relined with new insulation." One decedent "always" was nearby pipe-coverers using the defendant's product and worked with the product for 12-14 months, and another decedent worked 12-hour shifts every day for six weeks on a furnace rebuild using the product. Id. at 125-26.

- In Garrett, 682 A.2d at 1147-49, 1156-57, one decedent was exposed *every day for four years* to dust from sawing and installing insulation in engine boiler rooms, another decedent spent 1-2 years full-time and 30 years of weekend/overtime work cutting and installing defendant's product, and a third had "constant exposure" "in close proximity" on "every job" in a boiler room during the 1950s and outside piping during the 1960s.

- In Shetterly v. Raymark Indus., Inc., 117 F.3d 776, 780-81 (4th Cir. 1997), "the evidence places each [decedent] either in close proximity to [Raymark] asbestos from the storeroom or … to [Armstrong] contractors who 'exclusively'

19

used Raymark's products," creating "a high likelihood" that they "either used or worked near" Raymark's products.

Plaintiffs cite these cases to argue that they need not prove specific locations and times of exposure (Pls. Br. 24-28), but those cases all had such proof. Indeed, Reiter squarely rejects this contention: "'a plaintiff .... must prove that he worked in the vicinity of the product's use'" on a "day-to-day basis." 8 A.3d at 733 (citations omitted). So does Balbos: "the proof here does not even place Knuckles on the same ship, much less during the same repair, where Porter installers were applying Porter-supplied products." 604 A.2d at 463. Plaintiffs' failure to show frequent, regular exposures to Defendants' products at a specific worksite is fatal to their claims.

### A.    MCIC.

Plaintiffs contend that the district court erred (1) "by misapplying the law of substantial factor causation of asbestos related disease," i.e., by applying Lohrmann/Balbos; (2) "by overlooking direct exposure evidence," which in fact is non-existent; and (3) by "erroneously failing to consider the legally applicable circumstantial evidence standard set up by Maryland law," i.e., by applying Lohrmann/Balbos. (Pls. Br. 32). The applicability of Lohrmann/Balbos needs no further explanation. As for evidence of exposure, Garnes never identifies MCIC (or any other contractor), let alone testify that he frequently and regularly worked in proximity to MCIC in a shipyard.

The only witness that has provided testimony concerning Garnes' exposure to asbestos was Garnes himself, and Garnes did not identify MCIC. <u>See</u> JA 442-658. In opposing MCIC's summary judgment motion, Plaintiffs cited *only* to historical evidence placing MCIC in shipyards generally and did not argue that Garnes was near MCIC's product on a particular ship for a particular length of time. <u>See</u> JA 1567-68. But even if Garnes had identified MCIC, his deposition, taken on June 18, 2003 in his prior asbestosis case, would not be admissible against MCIC, which was not a party to that case, had no notice of the deposition, and thus did not attend. Garnes' testimony is inadmissible hearsay as to MCIC.

Former testimony may not be used at trial by an unavailable witness unless it "is now offered against a party who had – or in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(B). Here, no "predecessor in interest" present at the deposition had a "similar motive" to develop testimony favoring MCIC – no co-defendant in an asbestos case has *any* motive to develop testimony favorable to another defendant or potential defendant. In fact, asbestos defendants have a specific interest in developing testimony *against* other defendants in an attempt to increase the potential "shares" in a given case. This renders Garnes' deposition not usable against MCIC. <u>See</u> <u>Lohrmann</u>, 782 F.2d at 1161 (affirming that testimony cannot be used against asbestos manufacturer not present at prior

21

deposition); <u>Horne v. Owens-Corning Fiberglas Corp.</u>, 4 F.3d 276, 283 (4th Cir. 1993) (same).

For the same reasons, Kenneth Groshon, who, Plaintiffs claim, is "the main testimonial proof on Mr. Garnes' behalf" (Pls. Br. 8), is inadmissible, as MCIC was neither a party to the case in which the deposition was taken nor represented at the deposition. And, even if it were admissible, it is immaterial. Groshon testified that he worked as an MCIC insulator on the USS <u>Patrick Henry</u> when it was constructed in the 1940s, but he did not mention Garnes, <u>see</u> JA 1613-17, 2200-05, and thus cannot place Garnes near asbestos associated with MCIC.

Plaintiffs next contend that, because Garnes testified that he was exposed to asbestos insulation on the <u>Patrick Henry</u> twenty years later during its demolition, he must have been exposed to asbestos that MCIC might have installed two decades ago. This is rank speculation: Plaintiffs have no evidence that any insulation that MCIC might have installed in the 1940s on the ship remained intact and was never replaced in the ensuing decades, such that it was the same insulation that Garnes allegedly was exposed to when the ship was demolished.

Equally meritless is Plaintiffs' claim that another witness, Harry Jurs, provides "proof of the presence of" MCIC at Key Highway when Garnes was there. (Pls. Br. 39). Jurs never mentions Garnes, let alone places MCIC together with Garnes. (JA 1619-25, 2275-95). Further, as described <u>infra</u>, there is no admissible

evidence in this case that Garnes ever worked at Key Highway. Absent such evidence, Jurs' testimony is irrelevant.

Finally, Plaintiffs rely on invoices that purportedly establish that MCIC supplied asbestos-containing products to Fairfield Shipyard, the United States Coast Guard Yard at Curtis Bay, and Maryland Shipbuilding and Drydock. (JA 1628-73). As MCIC explained below, none relates to Fairfield Shipyard or the U.S. Coast Guard Yard at Curtis Bay (JA 1936-37), and, as the district court ruled, none identifies an asbestos-containing product that was identified as having been used nearby Garnes (JA 2183-85).

As Plaintiffs presented no evidence to support a reasonable inference that Garnes was exposed to an asbestos-containing product for which MCIC is responsible, let alone exposed on a regular and frequent basis, the district court's grant of MCIC's summary judgment motion should be affirmed.

### B.    **General Electric.**

Plaintiffs make several challenges to the district court's rulings regarding GE. First, they argue that they must have a triable claim against GE because GE's notice of removal acknowledged the existence of a colorable federal defense against them. (Pls. Br. 46-48). Second, without citing any Maryland law and instead incorporating by reference an argument made by unrelated appellants in a different case pending in this Court, they argue a theory of "assembly liability" that is contrary to Maryland

law. (Pls. Br. 48-50). Later, at the end of their brief, they argue that the district court abused its discretion by failing to let them file their opposition to the motion for summary judgment out-of-time (weeks after the court had already granted summary judgment). (Pls. Br. 56-57). These arguments fail, both on the merits and for the threshold reason that Plaintiffs inexplicably never opposed GE's summary judgment motion despite having twice extended the deadline for filing their opposition papers.

1.  **The district court did not abuse its discretion in denying Plaintiffs' motion for leave to file their summary judgment opposition out-of time.**

Plaintiffs correctly state that the standard of review on the denial of Rule 60(b) relief is abuse of discretion. <u>Evans v. United Life & Accident Ins. Co.</u>, 871 F.2d 466, 472 (4th Cir. 1989). However, Plaintiffs' challenge to the district court's denial of their motion for leave to file an opposition out-of-time under Fed. R. Civ. P. 60(b) is meritless, as they fail to satisfy the Rule's stringent requirements. First, Plaintiffs failed to demonstrate that that their motion was timely, that they had a meritorious opposition to GE's motion, and that exceptional circumstances exist, all predicate grounds for relief under Rule 60(b). Second, their failure to oppose GE's motion for summary judgment was not the result of excusable neglect, as the district court twice extended the deadline for them to oppose the motion and they failed to provide any valid justification for their ultimate failure to file. Finally, they ignore the stringent standard for finding an abuse of discretion: "A district court abuses its discretion

only where it 'has acted arbitrarily or irrationally[,] ... has failed to consider judicially recognized factors constraining its exercise of discretion, or when it has relied on erroneous factual or legal premises.'" L.J. v. Wilbon, 633 F.3d 297, 304 (4th Cir. 2011) (citation omitted). Plaintiffs do not come close to satisfying this standard here.

### a.    Plaintiffs fail to show a meritorious defense and exceptional circumstances.

A Rule 60(b) motion is extraordinary, and the party seeking relief must first show "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." Dowell v. State Farm Fire & Cas. Co., 993 F.2d 46, 48 (4th Cir. 1993). Plaintiffs fail to meet at least two of these factors: meritorious defense and exceptional circumstances.

**i.    No meritorious defense.** A Rule 60(b) movant assumes "the burden of showing a meritorious defense against the claim on which judgment was entered as a threshold condition to any relief whatsoever under the Rule." Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979). As the district court found, Plaintiffs failed to show a meritorious defense to GE's summary judgment motion, as they failed to produce any evidence that GE supplied any asbestos-containing products to which Garnes was exposed. (JA 2177).

A meritorious defense requires a proffer of evidence that would permit a finding for the moving party (Plaintiffs). Augusta Fiberglass Coatings, Inc. v. Fodor

Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988). In the context of this case, that requires at least some evidence that would allow a finding that GE manufactured or supplied an asbestos-containing product to which Garnes was exposed. See Phipps v. Gen. Motors Corp., 363 A.2d 955, 957 (Md. 1976); Christian v. Minn. Mining & Mfg. Co., 126 F. Supp. 2d 951, 958 (D. Md. 2001).

Plaintiffs admit that Garnes failed to provide any evidence about the manufacturers or suppliers of any asbestos-containing products at the shipyards and that no other witnesses could testify about his workplace exposures, either:

> Mr. Garnes was unable to identify any asbestos containing products by name, nor did he know the names of any insulation contractors who worked at the relevant shipyards. There are no co-worker witnesses to testify to Mr. Garnes['] work exposure.

(Pls. Br. 7). Their argument thus rests on two misleading factual premises. First, they contend that GE admitted in its notice of removal to federal court that it manufactured equipment installed on "Liberty Ships" at Fairfield Shipyard during World War II. (Pls. Br. 46-48). Second, they argue that, because Garnes testified that when he worked at Fairfield for eight months in 1942-44 as a cleanup broom-and-shovel laborer, he was exposed to asbestos from GE turbines at that time. The first contention is incorrect, and the second is irrelevant.

GE removed this case based upon *Plaintiffs*' interrogatory answer that Garnes was exposed to asbestos-containing products while working on a Navy ship, the USS Norton Sound. (JA 2015, 2018). Because GE manufactured and supplied bare-metal

turbines to the U.S. Navy, built to Navy specifications, for use on the <u>Norton Sound</u>, Plaintiffs' assertion of a specific claim concerning that ship necessarily implicated GE's federal-officer defense.[2]  GE's assertion of a federal defense in its notice of removal merely reflected the facts alleged by Plaintiffs.  By filing a notice of removal from facts arising from Plaintiffs' filings, GE obviously did not affirm that the facts alleged were true.  Otherwise, if the act of removal constituted an admission to the facts alleged by Plaintiffs, it would be impossible for a defendant ever to remove an action under 28 U.S.C. § 1442(a)(1).  GE's notice of removal was not an admission that GE manufactured turbines on Liberty Ships at Fairfield Shipyard in the 1940's.[3]

   As for the <u>Norton Sound</u>, the ship for which GE admits it supplied a turbine to the Navy, under Navy specifications, Plaintiffs do not provide sufficient information.  The <u>Norton Sound</u> was a Navy icebreaker brought to Curtis Bay Coast Guard Shipyard, presumably for repairs, at some time not clear from the record. Indeed, Plaintiffs provided no information about this ship in discovery and instead referred to an interrogatory answer filed by a different plaintiff in an unrelated case:

---

[2] Plaintiffs do not challenge in this appeal GE's removal of the case pursuant to the "federal officer" removal provisions of 28 U.S.C. § 1442(a)(1).

[3] Although not in the record, it is matter of historical fact that none of the Liberty Ships had steam turbines, the product at issue.  The same is true for eighteen "Victory Ships" that Plaintiffs mentioned in discovery as being built at Fairfield during the same time period.  Therefore, none of ships identified by Plaintiffs as being at Fairfield Shipyard during the time Mr. Garnes was present had GE-manufactured steam turbines.

"At the U.S. Coast Guard, [Garnes] was exposed to the same products in the course of the same type of insulation operations *and the ships that he worked on are enumerated in Answer to Interrogatory No. 88 of Joseph Single* which is incorporated by reference therein." (JA 2015) (emphasis added). But Single's interrogatory answer merely states, "At Curtis Bay Coast Guard Shipyard, [Single] was exposed to asbestos dust while working on or near an ice breaker (believed to be the North Wind), another ice breaker *Norton Sound*, AVP Ammunition Tender Unimac and various Coast Guard cutters and patrol boats...." (JA 2018) (emphasis added). Nothing alleged exposures to any asbestos associated with a GE turbine.

Plaintiffs' other evidence is equally unavailing. His Social Security printout merely shows that Garnes worked at Curtis Bay in three quarters of 1953 and the first quarter of 1956. (JA 2123-24). In his 2003 deposition, Garnes said that could not recall the names or hull numbers of the ships he worked on at Curtis Bay. (JA 571-77). Therefore, the only evidence connecting Garnes to the Norton Sound is one of Plaintiffs' answers to interrogatories incorporating by reference a list of ship names from a case filed by another person.

Finally, even if some link to GE were shown, Plaintiffs cannot establish liability merely because another contractor affixed asbestos insulation to a GE turbine after it was installed on a ship. See Ford Motor Co. v Wood, 703 A.2d 1315, 1332 (Md. App. 1998). The Harper briefing, which Plaintiffs improperly invoke in

this case, makes this clear. In sum, there are no facts in the record upon which a jury could find that GE manufactured or supplied any asbestos-containing product to which Garnes was exposed and thus no facts to support Plaintiffs' contention that GE's motion for summary judgment should have been denied.[4]

Therefore, as the district court properly found, Plaintiffs did not show a meritorious defense to GE's motion for summary judgment and thus failed the threshold test for relief under Rule 60(b).

**ii.    No exceptional circumstances.** Rule 60(b) provides a remedy that "is extraordinary and is only to be invoked upon a showing of exceptional circumstances." Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979); accord Dowell, 993 F.2d at 48. Plaintiffs do not even try to show exceptional circumstances, as their failure to comply with the district court's *third* deadline for filing their summary judgment motion was the result of lawyer inadvertence, which is not excusable neglect, let alone an exceptional circumstance. Given the manifest lack of exceptional circumstances, the district court did not abuse its discretion in denying Plaintiffs' Rule 60(b) motion.

---

[4] As the district court ruled, the absence of facts showing that GE manufactured or supplied an asbestos-containing product to which Garnes was exposed mandates summary judgment in favor of GE. But even if such facts existed, GE's summary judgment motion raised defenses that the district court did not reach. Before GE's motion could be denied, those arguments would need to be considered and decided.

### b.    Plaintiffs' failure to oppose GE's summary judgment is not excusable neglect.

In addition to the above requirements, Plaintiffs fail to establish "excusable neglect" under Rule 60(b)(1).    To show excusable neglect, Plaintiffs "must demonstrate inter alia that [they] were not at fault[.]"   Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 132 (4th Cir. 1992).  Here, Plaintiffs utterly fail to show that they were not at fault.

Far from a record showing a lack of fault, here the evidence of fault is overwhelming, as Plaintiffs failed to comply with the court's *third* deadline for opposing summary judgment.  The chronology speaks for itself.  Pursuant to the district court's scheduling order, GE moved for summary judgment on September 16, 2013, making Plaintiffs' opposition due on October 3, 2013.  (JA 1163, 1739, 2176).  Plaintiffs moved for an extension, which the district court granted, extending the deadline to October 24.  (JA 33-34, ECF 43).  On October 22, Plaintiffs moved for a second extension, which the district court granted and denied in part, extending the deadline to November 4, 2013 but warning that "no further extension shall be granted absent consent of all parties to this litigation."  (JA 34, ECF 437; JA 2176). Despite the two extensions and the clear warning, Plaintiffs inexplicably failed to file an opposition by the November 4 deadline.  One week later, on November 11, 2013, GE advised the district court that Plaintiffs had not filed an opposition.  (JA 35, ECF 446).  Despite this express warning of their peril, Plaintiffs *still* did not file

an opposition. Finally, on November 13, the district court granted GE's motion as unopposed, nine days after the court's *third* deadline had lapsed. (JA 1739).

Plaintiffs moved for reconsideration on November 17 (JA 36, ECF 454; JA 1939), but they did not move for leave to oppose GE's summary judgment motion out-of-time until December 13, 2013, a full month after the district court's order granting summary judgment. (JA 36, ECF 457; JA 2076). They claimed excusable neglect for their violation but provided no clear excuse. (2076-81). On February 26, 2014, the district court denied both motions "[b]ecause Plaintiffs have not shown a meritorious defense and their failure to submit a timely opposition does not constitute excusable neglect." (JA 2176).

In the district court, Plaintiffs blamed their violation on counsel's schedule, claiming that counsel were busy responding to other summary judgment motions in this and other cases. (JA 2077-78). On appeal, however, Plaintiffs provide no excuse at all. <u>See</u> Pls. Br. 56. In any event, this excuse (counsel's workload) does not come within the ambit of Rule 60(b)(1), as the fact that "[a] party that fails to act with diligence will be unable to establish that his conduct constituted excusable neglect pursuant to Rule 60(b)(1)." <u>Robinson v. Wix Filtration Corp.</u>, 599 F.3d 403, 413 (4th Cir. 2010) (citing <u>State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada</u>, 374 F.3d 158, 177 (2d Cir. 2004)); <u>see also</u> <u>Tucker v. U.S. Dept. of the Army</u>, Civ. A. No. J-79-2256, 1981 WL 380684 at *1 (D. Md. Aug. 3, 1981)

(denying Plaintiff's Rule 60(b)(1) motion for failure to comply with the Court's deadline to oppose summary judgment motions). In <u>Robinson</u>, a plaintiff failed to file a timely opposition to a summary judgment motion because counsel had failed to receive electronic copies of the motion due to computer difficulties, and this Court affirmed the district court's denial of relief, holding that computer problems did not constitute excusable neglect under Rule 60(b)(1). The facts here are much worse. Not only did counsel not have any technical problems to blame, but the district court had already extended the deadline twice at Plaintiffs' behest. Failing to abide by the third deadline was inexcusable, not excusable, neglect. <u>See generally</u> <u>Evans v. United Life & Accident Ins. Co.</u>, 871 F.2d 466, 472 (4th Cir. 1989) ("a lawyer's ignorance or carelessness do[es] not present cognizable grounds for relief under [Rule] 60(b)"). As in <u>Robinson</u>, the district court did not abuse its discretion in denying Plaintiffs' Rule 60(b)(1) motion.

Plaintiffs rely principally on <u>Augusta Fiberglass Coating v. Fodor Contracting</u>, 843 F.2d 808 (4th Cir. 1988), which reversed a denial of a Rule 60(b) motion to set aside a default judgment, finding that (i) plaintiff had a meritorious defense, (ii) other threshold factors were satisfied, (iii) counsel had a good faith reason for not filing an answer, and (iv) default judgments must be reviewed liberally. <u>See</u> <u>id.</u> at 810-12. None of those reasons exist here, and, in any event, as <u>Robinson</u> teaches, <u>Augusta Fiberglass</u> does not apply to counsel's failure to oppose a

summary judgment motion. That is especially true here, where Plaintiffs were given two extensions to file an opposition and yet still ignored the third deadline, for no apparent reason other than inadvertence and workload. The district court was well within its discretion to find that there was no excusable neglect to deny Plaintiffs' motion to file their opposition out-of-time.

### 2.    GE was entitled to summary judgment on the merits.

For the same reasons that Plaintiffs failed to establish a meritorious defense to GE's motion for summary judgment, Plaintiffs' proffer of their grounds for opposing GE's motion (Pls. Br. 46-50) provides no evidence from which a jury could conclude that GE manufactured or supplied any asbestos-containing product to which Garnes was exposed, and thus is insufficient to defeat GE's motion. Indeed, Plaintiffs are not entitled to two bites at the apple: the test for a meritorious defense is the same as the test for opposing summary judgment, and Plaintiffs must satisfy Rule 60(b) and reopen the judgment before they can reach the merits.

Even if the argument were proper procedurally, it lacks substantive merit. Plaintiffs have no evidence that Garnes worked on the Norton Sound, the one ship where there is evidence of a GE-manufactured turbine. Garnes himself had no recollection of that ship. Their arguments with respect to assembler liability are not only legally the incorrect standard, but they also are irrelevant, as no evidence places Garnes anywhere near a GE turbine, or any other GE-manufactured equipment.

33

Finally, even if Plaintiffs had factual proof to support their claims, GE's motion for summary judgment rested on other grounds as well. GE raised several defenses in its motion for summary judgment, supported by undisputed facts, some of which were not reached by the district court. Before GE's motion may be denied, those arguments would need to be considered and decided.

**C.    SB Decking.**

> **1.    The Locilento deposition and Dembosky responses to requests for admissions are inadmissible and should be ignored on appeal.**

Plaintiffs place great reliance on a 1983 deposition of Dominic Locilento and on SBD's nearly 20-year-old responses to requests for admissions ("RRFAs") in a Baltimore City Circuit Court case, Doris Dembosky v. AC&S Inc., No. 96124505. (Pls. Br. 41).[5] Neither exhibit is admissible, and thus neither exhibit should be considered on appeal. Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 973 (4th Cir. 1990); Keziah v. W.M. Brown & Son, Inc., 88 F.2d 322, 326 (4th Cir. 1989).

SBD was not a defendant in Locilento's lawsuit, and no SBD attorney was present at his deposition. (JA 1759-69). Where a party against whom a deposition transcript is offered was not present and no other party had the same motive to challenge the testimony, it may not come into evidence against the absent party.

---

[5] SBD filed a motion to strike the Locilento deposition (JA 1743, 2135), which the district court declared moot, after awarding summary judgment in its favor. (JA 2186).

Lohrmann, 782 F.2d at 1161; Horne v. Owens-Corning Fiberglas Corp., 4 F.3d 276, 283 (4th Cir. 1993). No defendant at Locilento's deposition had the same motive as SBD to challenge claims that his employment at SBD was the cause of his illness. To the contrary, those defendants had every incentive to exaggerate SBD's role, thereby minimizing their own. Under Fed. R. Evid. 804(b)(1), Plaintiffs may not rely on Locilento.

As for Plaintiffs' use of SBD's 1997 RRFAs in the Dembosky case, SBD was unable to challenge this exhibit below because it was withheld until Plaintiffs' reply to SBD's opposition to their motion for reconsideration to the district court's award of summary judgment to SBD. (JA 2398-2407). Because the RRFAs were belatedly proffered to the district court, they should not be considered on appeal. Obviously, nearly twenty-year-old RRFAs could have been timely presented to the district court, and Plaintiffs have no excuse for not doing so. Their obvious and improper motive was to gain an unfair tactical edge, where SBD might not have an opportunity to complain about the document. Courts see through such blatant gamesmanship; adding new documents to support an already rejected argument is not allowed. See Frietsch v. Refco, Inc., 56 F.3d 825, 828 (7th Cir. 1995) (affirming district court's refusal to consider affidavit belatedly submitted to support a motion for reconsideration after judgment had been entered); Charles Alan Wright & Arthur R. Miller, 11 Federal Practice and Procedure § 2810.1, at 163-64 (3d ed. 2015).

### 2.    Plaintiffs did not prove that Garnes was substantially exposed to asbestos from an SB Decking product.

Plaintiffs' argument (Pls. Br. 21-22, 40-46) falls apart when Garnes' own testimony is examined. Garnes, who was in the best position to know what he did as a shipyard laborer, never claimed to work in ammunition compartments of Navy ships, around any spray-fireproofing, or around any decking compound. To the contrary, he admitted working in the engine and boiler rooms of vessels under construction. See, e.g., JA 2410. No other fact witness placed Garnes at or near any SBD employees spraying fireproofing or troweling on decking products.

Even if the Locilento deposition and Dembosky RRFAs were considered, neither places Garnes near any SBD employees, much less in regular and frequent proximity to their fireproofing or decking operations. Garnes worked at Fairfield Shipyard at the height of World War II, where all 16 "ways" were occupied by ships in varying degrees of completion. Locilento did not place Garnes at the same spot on a specific ship at the same time that he allegedly was spraying Limpet or using magnesite. (JA 1535-40). As a laborer in the engine rooms and boiler rooms, Garnes would not have been in the ammunition compartments or other parts of the ships that Locilento discussed. (JA 838-78). While the Lohrmann decision does not bar circumstantial evidence in proving causation, there still must be direct evidence – through eyewitness testimony or work records – placing plaintiff at a specific

location for a suitable duration to inhale a substantial quantity of dust from a specific product.

None of the fact witnesses offering general product identification drew the necessary connection between his activity and Garnes' presence. Such general evidence about a product in a vast, bustling shipyard like Fairfield during WWII, with thousands of workers and dozens of ships simultaneously under construction, does not support a reasonable inference of injurious exposure of a specific individual to a specific product.[6] See Reiter, 8 A.3d at 730. Here, no witness, including Garnes himself, put Garnes where he encountered fibers from any brand of fireproofing or decking.

Similarly, general fact witnesses, Joseph Lieb and Joseph Zeleny, did not know Garnes and never placed him near SBD workers. Lieb, an "expediter" at Maryland Shipbuilding & Drydock ("MS&D"), did not put Garnes on a single vessel, let alone in regular, frequent, and close contact with SBD workers. (JA 1541-47). As to fireproofing at MS&D, all Lieb could offer – and this only for a single ship – was: "On this particular job there wasn't that much going on. I made no real observation of that." (JA 1886) (emphasis added). Lieb admitted that he did not know what material was sprayed and that "Selby" was not the only contractor

---

[6] See JA 916-43 (uncontradicted report of Charles R. Cushing, Ph.D., describing the pace of operations at Fairfield Shipyard during WWII).

spraying. (JA 1887-88). Plaintiffs' reliance on Joseph Zeleny is even more futile. Zeleny spent his entire career (1937 - 1979) at Key Highway. (JA 1873-74). While Plaintiffs assert that "Mr. Garnes worked intermittently at Bethlehem Steel Key Highway [Shipyard] from 1944–1947" (Pls. Br. 45), the record does not support their claim. Garnes never testified to working at Key Highway. Plaintiffs' counsel stipulated to relying on work history shown in Garnes' Social Security earnings printout (JA 1867), and it does not reflect any earnings from "Key Highway." (JA 1841-49). Even if there were evidence that Garnes worked at Key Highway, Plaintiffs never linked Zeleny's general testimony concerning fireproofing to a specific time and ship where Garnes was present.

Finally, Plaintiffs argue that, because Locilento's deposition mentions SBD applying "magnesite" decking at Fairfield Shipyard around 1946 and because Garnes worked "[o]n many ships during the same time…, there can be no doubt as to his exposure to [magnesite]." (Pls. Br. 45). No evidence supports this conclusion.

Plaintiffs' argument rests on multiple false assumptions. They would have this Court find that all "magnesite" was exclusively installed by SBD, and that all magnesite contained asbestos. Neither assertion is correct. Both sources cited by Plaintiffs – SBD's answers to interrogatories and the testimony of its corporate representative, Karl Spaeth (Pls. Br. 42-43) – make clear that only one of many formulations of SBD's magnesite ever had asbestos in it, and that product had

asbestos removed by the early 1960s. (JA 1931-32). More importantly, Spaeth said that only SBD employees would be allowed in an area when its decking materials were being installed. (JA 1934). Garnes, a shipyard employee, would not have been allowed in "proximity" to workers using any formulation of magnesite. Just as important, nothing in the record differentiates between SBD's asbestos-containing and asbestos-free versions of magnesite. It was Plaintiffs' burden to prove that Garnes was substantially exposed to the asbestos-containing variety, Celotex v. Catrett, 477 U.S. 317, 322-23 (1986), and they failed to shoulder that burden.

In short, even if the Locilento transcript and Demboski RRFAs are considered, Plaintiffs lacked any evidence to defeat SBD's motion for summary judgment. No specific exposure was proven, and no one, including Garnes himself, placed Garnes near SBD products with sufficient specificity to satisfy the Lohrmann, Balbos, and Reiter standards of proof.

### D.   WGAST.

WGAST is a successor by bankruptcy to Wallace & Gale ("W&G"), a supplier/installer of asbestos-containing and non-asbestos-containing insulation products. Plaintiffs argue that Garnes was exposed to W&G asbestos-containing products during brief stints at Key Highway Shipyard in 1944 and 1946. (Pls. Br. 52-53). They lack *any* proof that he even worked at this shipyard, let alone that he

worked there frequently, regularly, and in close proximity to asbestos-containing products supplied or installed by W&G.

1.    Garnes *never* mentioned working at Key Highway or near W&G when he testified about his asbestos exposure.  See JA 442-658.

2.    Plaintiffs have no admissible evidence that Garnes worked at Key Highway.  The argument section of their Brief has no record cites supporting this allegation.  See Pls. Br. 39, 52-53.  Elsewhere (id. at 10), they cite a social security printout (JA 59, second entry from bottom) stating that Garnes worked for Bethlehem Steel Co. in 1944-47, but it does not specify a Bethlehem Steel shipyard or factory where he worked.  On the printout version Plaintiffs attached in opposition to WGAST's summary judgment motion, someone wrote "KEY [illegible]" next to the entry (JA 1701), but the author is unknown.  Contrast with JA 59, 148, 1435, 1513, 1589, 1718, 1842, 1962, printout version without handwriting, all attached by Plaintiffs to other filings).  Unauthenticated, obscure handwriting on a printout – anonymous hearsay – is inadmissible at trial and thus does not create a genuine dispute of fact.

3.    Plaintiffs never mentioned Key Highway in (a) the places of exposure listed in their complaint (JA 143 ¶ 9); (b) their interrogatory answer identifying each place of alleged exposure (JA 92-94, no. 88); (c) their sworn affidavit listing places

of exposure submitted in support of their proof-of-claim forms submitted to WGAST (JA 1432); or (d) their proof-of-claim forms for each site of exposure (JA 1402-04).

4.    Plaintiffs rely on Harry Jurs' testimony that W&G worked at Key Highway (JA 2275-78), but Jurs *never mentioned* Garnes.

5.    Even if proof existed that Garnes worked at Key Highway, such proof would still need to show Garnes' actual exposure to W&G and that this exposure was frequent, regular, and close, and thus sufficient to satisfy <u>Balbos</u>. Plaintiffs have no such proof. In <u>Balbos</u>, 604 A.2d at 463, the COA rejected *the same quantum of proof* for another supplier-installer, Porter Hayden:

> [T]he residuum of proof is that Bethlehem, between 1964 and 1968, "sometimes" used outside installers at Key Highway, one of whom was Porter, and that Knuckles was employed at Key Highway during the same period. This does not establish that Knuckles was frequently exposed in proximity to Porter-supplied asbestos products which were regularly used.

Thus, the district court properly granted summary judgment in favor of WGAST.

## IV.    Plaintiffs Failed to Establish Personal Jurisdiction over Wayne.

### A.    The district court correctly rejected Plaintiffs' stream-of-commerce argument and held that Wayne is not subject to personal jurisdiction in Maryland.

It is undisputed that, prior to its dissolution, Wayne was a Virginia Corporation. <u>See</u> Pls. Br. 51-52; JA 1494, 2191. Therefore, for the district court to assert personal jurisdiction over Wayne, two conditions had to be satisfied: "(1) the exercise of jurisdiction must be authorized under [Maryland's] long arm statute; and

(2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 396 (4th Cir. 2003) (internal quotation marks and citation omitted). In Maryland, these two conditions are coextensive and thus, "the statutory inquiry merges with the constitutional inquiry." <u>Id</u>. Plaintiffs thus must show that Wayne had sufficient "minimum contacts" with Maryland such that requiring it to defend in Maryland does not "offend the traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

In the district court, Plaintiffs attempted to satisfy personal jurisdiction by advancing a "stream of commerce theory." Plaintiffs' position is without merit and contrary to settled law. Specifically, as the district court summarized the issue, Plaintiffs argued personal jurisdiction exists "because Wayne sold Marinite panels to Hopeman [in Virginia] which were installed in Maryland." (JA 2192). This Court, however, has repeatedly held that selling a product with knowledge that it eventually will be sold in the forum state does not constitute minimum contacts absent additional evidence that the non-resident defendant acted purposefully toward the forum state. <u>See</u> <u>In re Celotex Corp.</u>, 124 F.3d 619, 628 (4th Cir. 1997); <u>Lesnick v. Hollingsworth & Vase Co.</u>, 35 F.3d 939, 946-47 (4th Cir. 1994). As <u>Lesnick</u> explains,

42

> The touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state…To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks.

Lesnick, 35 F.3d at 945; accord Celotex, 124 F.3d at 628. As the district court found, Plaintiffs failed to provide any evidence that Wayne acted purposefully toward Maryland. (JA 2192). This is fatal to their claim. Glynn v. Edo Corp., 710 F.3d 209, 213 (4th Cir. 2013). Thus, under Lesnick and Celotex, the district court's order granting summary judgment on behalf of Wayne should be affirmed.

### B. Plaintiffs' veil-piercing argument was not raised below and may not be raised for the first time on appeal.

Plaintiffs' personal jurisdiction argument now rests on a contention they never raised below. For the first time on appeal, Plaintiffs argue that Wayne, a wholly owned subsidiary of Hopeman Brothers, Inc., "vicariously" engaged in business in Maryland because Hopeman allegedly did so "purposefully," and Hopeman "shared common office[r]s and directors with" Wayne, which they claim, they would establish by judicial notice. (Pls. Br. 21, 51-52). Plaintiffs never raised this issue with the district court.[7] See JA 1676-80, 1709-16.

---

[7] Instead, Plaintiffs argued below that the district court should rely on a prior ruling in a case against Wayne brought by another plaintiff, Bing, in which the court ruled

Generally, an issue not raised in the district court will not be considered on appeal. Goodyear Dunlop Tire Operations, S.A. v. Brown, 131 S. Ct. 2846, 2857 (2011); Singleton v. Wulff, 428 U.S. 106, 120 (1976); Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999) (issues not raised below generally are not considered on appeal); United States v. Dickerson, 166 F.3d 667, 683 (4th Cir. 1999) (this Court may not address an issue not raised below absent exceptional circumstances); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) (issues not raised will not be considered on appeal unless the "refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice"); United States v. One 1971 Mercedes Benz 2–Door Coupe, 542 F.2d 912, 915 (4th Cir. 1976) (failure to raise and preserve issue below waives consideration of it on appeal absent exceptional circumstances).

Because Plaintiffs did not raise this issue below, this Court should decline to consider it.

---

that Wayne's personal-jurisdiction motion to dismiss was premature as discovery was still proceeding on the issue of whether Wayne's alleged conduct relating to allegations of conspiracy somehow subjected it to personal jurisdiction. (JA 1715-16). No such issue was ever raised in this case. See JA 1709. Further, as outlined in Section V below, it is not appropriate for Plaintiffs to oppose summary judgment by making passing references to a different case.

### C.    Plaintiffs failed to offer any evidence to support veil-piercing.

Even if this Court were to find that exceptional circumstances warrant hearing Plaintiffs' unpreserved veil-piercing argument, that argument still fails. It is Plaintiffs' burden to demonstrate grounds for piercing the corporate veil, DeWitt Truck Brokers, Inc. v. W. Roy Flemming Fruit Co., 540 F.2d 681, 683 (4th Cir. 1976), and they fail to meet their burden.

Maryland uses the "agency test" to analyze whether or not to pierce the corporate veil for personal jurisdiction reasons. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 61 (4th Cir. 1993). Maryland generally "is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil." Haley Paint Co. v. E.I. DuPont de Nemours & Co., 775 F. Supp. 2d 790, 797 (D. Md. 2011) (internal quotation marks and citation omitted). Thus, under Maryland's agency test, a court "may attribute the actions or contacts of a subsidiary corporation to the foreign parent corporation 'only if the parent exerts considerable control over the activities of the subsidiary.'" Id. (quoting Mylan Labs., 2 F.3d at 61). As a subsidiary corporation cannot be said to have control over the actions of the parent, this test, by definition, precludes a finding of jurisdiction over a subsidiary based upon the activities of the parent in the forum state.

Plaintiffs' suggestion that the subsidiary is "vicariously" responsible for the acts of the principal, over whom by definition it has no control, thus is incorrect.

Indeed, the law is to the contrary: a court's jurisdiction over a parent corporation does not establish its jurisdiction over the subsidiary. See, e.g., Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) ("nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary"); Goldrick v. D. M. Picton Co., 56 F.R.D. 639, 642 (E.D. Va. 1971); Quinn v. Bowmar Publishing, 445 F. Supp. 780, 786 (D. Md. 1978) (jurisdiction over corporate officers cannot be predicated on fact that there was jurisdiction over their corporate employer); Hare v. Family Publications Serv., Inc., 342 F. Supp. 678, 684 (1972) (same). Plaintiffs cite no case where a court found jurisdiction over a subsidiary corporation based solely on jurisdiction over the parent.

But even if, arguendo, a parent could plausibly be an agent of a subsidiary, Plaintiffs fail to show the requisite proof of undue control or violation of corporate formalities. See Mylan Labs., 2 F.3d at 63-64 (declining to exercise personal jurisdiction over a subsidiary on an agency theory because the plaintiff did not prove that the defendant violated corporate formalities or exercised undue control over the subsidiary); DeWitt Truck Brokers, 540 F.2d at 686-87 (veil-piercing is permitted for jurisdictional purposes only if compelling evidence shows that parent company

exerted undue control over its affiliate or disregarded corporate formalities).[8] Indeed, Plaintiffs' offer no such evidence.

Rather, the only "evidence" Plaintiffs cite is the alleged existence of common officers and directors, which they would establish by asking this Court "to take judicial notice of the records of the Virginia Corporation Commission." (Pls. Br. 51-52). The general rule is that shared common officers and directors, without more, are insufficient to pierce the corporate veil. See, e.g., Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1160 (5th Cir. 1983) (common directorship not enough for veil-piercing); In re Lupron Mktg. & Sales Practices Litig., 245 F. Supp. 2d 280, 293 (D. Mass. 2003) ("'[S]tanding alone, the existence of common officers or directors serving both corporations is not sufficient to confer jurisdiction over a nonresident parent corporation.'") (citation omitted); Weiss v. La Suisse, 69 F. Supp. 2d 449, 458 (S.D.N.Y 1999) ("overlap of directors and officers between parent and subsidiary alone does not render the subsidiary a 'mere department' for jurisdictional purposes") (citation omitted).

---

[8] Relevant factors under the agency test generally include "(1) 'whether significant decisions of the subsidiary must be approved by the parent'; (2) 'whether the parent and the subsidiary maintain separate books and records, employ separate accounting procedures, and hold separate directors' meetings'; and (3) 'the level of interdependence between parent and subsidiary.'" Haley Paint, 775 F. Supp. 2d at 797 (quoting Mylan Labs, 2 F.3d at 61).

Simply put, Plaintiffs have not identified any ground to pierce the corporate veil.  Plaintiffs have put no evidence before this Court to establish that Wayne, the subsidiary, somehow controlled parent Hopeman at all.  Plaintiffs have not provided any evidence, let alone "compelling evidence," that Hopeman exerted undue control over Wayne or that corporate formalities were not followed.  As a result, Plaintiffs' effort to pierce the corporate veil is without factual foundation or legal basis.

In light of the above, the district court's order should be affirmed.

## V.    Plaintiffs Cannot Defeat Motions for Summary Judgment through Sweeping Incorporations by Reference of Arguments, Memoranda, or Evidence Filed in a Different Case.

Plaintiffs' oppositions to the summary judgment motions below also failed because they incorporated by reference materials in other cases.  For example, in opposing WGAST's motion, Plaintiffs' 1½-page answer contained no legal argument and instead cryptically incorporated legal arguments made in the Harper and Hurley cases.  (JA 1695-96).  Similarly, their responses to motions by SB Decking (JA 1509, 2041), MCIC (JA 1563), and Wayne (JA 1677, 1710), generically incorporated by reference materials from other cases without introducing those documents into the record of this case and identifying which ones created a fact issue.  On appeal, Plaintiffs repeat this practice, generically citing to the Harper record, not the record below, and attempting to incorporate wholesale a 6-page legal argument made by appellants in Harper as to GE.  See Pls. Br. 19, 50.

Federal Rule of Civil Procedure 56(c) does not permit Plaintiffs to oppose a summary judgment motion with passing references to voluminous filings from a different case. The Rule's plain text requires a nonmoving party to identify particular fact-issue creating materials in the *record* of that case. See Fed. R. Civ. P. 56(c)(1)(A) (requiring nonmoving party to cite to "particular parts of materials in the record"); Hudson Assocs. Consulting, Inc. v. Weidner, No. 06-2461-EFM, 2010 WL 1980291, at *2 (D. Kan. May 18, 2010) ("The parties' attempt to incorporate by reference numerous documents filed in separate cases and dealing with separate parties is improper."). As the Seventh Circuit aptly stated, Plaintiffs' incorporation-by-reference technique expects the court and opposing counsel to assume the role of "pigs[] hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). Another court explains in nearly identical circumstances:

> It … is the parties' responsibility to present their facts, arguments, and authorities in an understandable fashion. If the parties are seeking a ruling on a discreet issue, they cannot incorporate by reference their arguments with regard to other issues and expect the Court to know which facts or arguments apply to their specific issue.

Hudson Assocs., 2010 WL 1980291 at *2.

Plaintiffs' attempts to "incorporate by reference" should be treated as no evidence. Having failed to refer to particular materials and explain how they apply here, Plaintiffs failed to discharge their fundamental Rule 56 obligations. Their improper short-cut provides an alternative basis for affirming the judgments below.

## VI.    Plaintiffs Were Not Entitled to a Hearing.

Plaintiffs' contention that the district court erred by not holding a hearing (Pls. Br. 53-55), is especially meritless.  They rely on a *state-court* rule that does not apply in federal court and ignore (i) Fed. R. Civ. P. 78(b) ("By rule or court order, the court may provide for … determining motions on briefs, without oral hearings."); (ii) D. Md. Loc. R. 105.6 ("Unless otherwise ordered by the Court…, all motions shall be decided on the memoranda without a hearing."); and (iii) the district court's broad discretion.  See Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc., 973 F.2d 349, 352 (4th Cir. 1992) (decision to hold a hearing is "in the discretion of the district courts").  Under this settled law, "[t]here is no requirement that a ruling on a motion for summary judgment be preceded by a hearing." Scott v. Health Net Fed. Servs., LLC, 463 F. App'x 206, 209 (4th Cir. 2012).

Plaintiffs do not contend that the district court abused its discretion, and for good reason: no hearing was needed given the ample briefing.  See Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 396 (4th Cir. 1994) (holding that, where no party sought to present new information, the court "clearly did not abuse its discretion" in deciding summary judgment based "on the papers before it").

## CONCLUSION

For the foregoing reasons, the judgments below should be affirmed.

Dated: July 20, 2015

Respectfully submitted,

/s/ Mitchell Y. Mirviss
Mitchell Y. Mirviss
Theodore F. Roberts
Scott M. Richmond
Venable LLP
210 W. Pennsylvania Avenue
Towson, MD  21204
(410) 494-6200
Counsel for Wallace and Gale
    Asbestos Settlement Trust


/s/ Donald S. Meringer
Donald S. Meringer
David J. Quigg
Meringer, Zois & Quigg, LLC
320 North Charles Street
Baltimore, Maryland 21201
(443) 524-7978
Counsel for General Electric Company


/s/ David W. Allen
David W. Allen
Terri Goldberg
Aaron L. Moore
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4000
Counsel for Wayne Manufacturing Company

/s/ Louis E. Grenzer, Jr.
Louis E. Grenzer, Jr.
Bodie, Dolina, Hobbs, Friddell &
    Grenzer, P.C.
305 Washington Avenue, Suite 300
Towson, MD 21204
(410) 823-1250
Counsel for MCIC, Inc.


/s/ F. Ford Loker
F. Ford Loker
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD  21202
(410) 727-6464
Counsel for SB Decking, Inc.

## CERTIFICATE OF COMPLIANCE

This brief was prepared in 14-point Times New Roman Font, and has a word count of 12,366 words in compliance with Local Rule 28.1 allowing a word count of 14,000 words.

*/s/ Mitchell Y. Mirviss*
Mitchell Y. Mirviss


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of July 2015, the foregoing Brief of Appellees was filed using the Court's CM/ECF system, which will send notification of such filing to all counsel of record. In addition, the required eight paper copies have been mailed by overnight mail, United Parcel Service, for filing with the Clerk, U.S. Court of Appeals for the Fourth Circuit, as required by Local Rule 31.

*/s/ Mitchell Y. Mirviss*
Mitchell Y. Mirviss

9928410-v1